UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DON'E J. WHITE, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 2:04-CV-23 (JCH) |
| STATE OF MISSOURI, et al., | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

The matters are before the Court on various motions.[1] The matters are briefed and ready for disposition.[2]

**BACKGROUND**

Plaintiff Don'e J. White is presently an inmate of the Missouri Department of Corrections ("MDOC"). (Am. Compl., Doc. No. 12). Defendant Gail Bailey ("Bailey") is the Health Services Administrator at the Moberly Correctional Center ("MCC"), where she is responsible for the administrative needs of the nursing and medical staff. (Defs.' Statement of Uncontroverted Facts,

---

[1]Plaintiff Don'e J. White's Amended Motion for Summary Judgment (Doc. No. 97), filed September 18, 2006; Defendant Teresa Thornburg's Motion for Summary Judgment (Doc. No. 118), filed October 19, 2006; Defendants Glen Babich, Gail Bailey, and Theresa Vanlandingham's Motion for Summary Judgment (Doc. No. 122), filed October 23, 2006; and Defendant Richard Graham's Motion for Summary Judgment (Doc. No. 157), filed December 12, 2006.

[2]Although Plaintiff has filed an interlocutory appeal, the Court still has jurisdiction to rule on these matters. The Eighth Circuit holds that "once a notice of appeal is filed, the district court is divested of jurisdiction over matters on appeal." State ex rel. Nixon v. Coeur D'Alene Tribe, 164 F.3d 1102, 1106 (8th Cir. 1999)(internal citations omitted). This principle is not absolute and allows the Court to keep jurisdiction when one party appeals a non-appealable order. Id. The purpose of this rule is to prevent a party from using frivolous appeals to delay or interrupt proceedings in the district court. Id. at 1107

Doc. No. 122 ¶ 15-16). Defendant Teresa Thornburg ("Thornburg") is the Superintendent of Inmate Management at MCC, where she oversees various units and is a liaison to the medical unit. (Thornburg's Memo. in Supp., Doc. No. 119 Ex. G, Thornburg Aff. ¶ 3). Defendant Dr. Glen Babich ("Babich") is a medical doctor that treats patients at the Southeast Correctional Center ("SCC"). (Doc. No. 122 ¶ 40). Defendant Dr. Richard Graham is an oral and maxillofacial surgeon that treated Plaintiff during 2002-2003. (Id. at ¶ 4).

On December 17, 2002, Plaintiff sustained a fractured mandible[3] during an altercation with another inmate at MCC. (Id. at ¶ 1). Plaintiff was transferred to MCC's transitional care unit ("TCU"). (Defs.' Memo. in Supp., Doc. No. 123 Ex. A. ("Pl.'s Medical Records") A163). X-rays showed that he had a broken mandible. (Id. at A164-69). The medical staff gave him Tylenol Three[4] and Morphine for the pain and scheduled him for surgery. (Id.).

On December 18, 2002, Dr. Graham performed an open reduction of the mandible fractures[5] and plated them with KLS 2.0 mm plates and screws. (Id. at Ex. B, Graham's Medical Records). Dr. Graham also wired Plaintiff's jaw shut to facilitate the necessary intermaxillary fixation.[6] (Doc. No. 122 ¶ 4). Plaintiff remained in the TCU, where he received a liquid diet and pain medication, from December 18, 2002 until December 21, 2002. (Pl.'s Medical Records at A169-77). On December 20,

---

[3]The mandible is the U-shaped bone that makes up the lower jaw. Stedman's Medical Dictionary 1060 (27th ed. 2000).

[4]Tylenol Three is an analgesic containing acetaminophen and codeine. It is used to treat mild to moderate pain. Physician's Desk Reference (2005).

[5]The open reduction of a fracture is a surgical operation to set the bone in proper alignment. Stedman's Medical Dictionary 1535 (27th ed. 2000).

[6]Intermaxillary fixation is the immobilization of the jaw using elastic bands and/or stainless steel wires between the maxillary and mandibular arch bars or other types of splints. Stedman's Medical Dictionary 682 (27th ed. 2000).

2002, Dr. Graham examined Plaintiff and found that his fractures were stable and his wounds were healthy. (Graham's Medical Records at pg. 2).

On December 21, 2002, MDOC transferred Plaintiff from MCC to the Northeastern Correctional Center's ("NCC") TCU. (Doc. No. 122 ¶ 6). While at NCC, he continued his liquid diet and pain medication. (Pl.'s Medical Records at A176-82). On December 25, 2002, he removed the wires in his mouth because "they were useless." (Id. at A182). On December 26, 2002, MDOC transferred Plaintiff to MCC's TCU. (Id. at A183-84). Its medical staff continued his liquid diet and pain medication; however, he took his elastic bands out because he "needed real food" and was seen eating his roommates solid food, even after being told it would impede his recovery. (Id. at A183-90). Plaintiff allegedly reinjured his jaw on December 31, 2002 after slipping on a wet bathroom floor. (Id. at A190-92). Dr. Robert Hampton examined him that day and referred him to Dr. Graham. (Id. at A194).

On January 3, 2003, Dr. Graham examined Plaintiff and found that some of the screws holding his fracture in place had broken. (Graham's Medical Record at pg. 2). Dr. Graham replaced the screws, wired his mouth shut, and stressed the importance of intermaxillary fixation. (Graham's Memo. in Support, Doc. No. 158 at Graham Aff. ¶ 9-11). On January 10, 2003, Dr. Graham examined him and found his fracture was stable. (Graham Medical Records at pg. 3).

On January 6, 2003, Vanlandingham examined Plaintiff, fed him pureed food, and administered pain medication. (Pl.'s Medical Records at A205). That day, another nurse noted that his elastic bands were deteriorating and informed Dr. Hampton of the situation. (Doc. No. 178 Ex. 19). On January 13, 2003,[7] Vanlandingham examined Plaintiff, found he had no elastic bands in his

---

[7]Other staff attended to Plaintiff when Vanlandingham was not present. For a detailed history of his relevant medical treatment, see, Doc. No. 122 Ex. A-C.

teeth, even though he had two intact ones on his cabinet.(Id. at A221). She also informed Dr. Hampton that the pain medication was upsetting his stomach. (Id.). On January 15, 2003 and January 17, 2003, she treated Plaintiff, fed him his special diet, and administered his pain medication. (Id. at A225-28).

On January 20, 2003, Dr. Graham examined Plaintiff and found that, although he denied any chewing, a screw had been partially pulled out of his jaw. (Graham's Medical Records at pg. 3). X-rays showed that the fracture was slightly displaced, but was still solid and Plaintiff's occlusion was normal. (Graham Aff. ¶ 14). Dr. Graham ordered Plaintiff kept on a liquid diet and scheduled a follow up visit for January 30, 2003. (Id.). Vanlandingham treated Plaintiff according to the doctor's orders on January 21-24, 2003. (Pl.'s Medical Records at A240-44). Dr. Graham examined Plaintiff on January 30, 2003 and placed another wire in his mouth to relieve discomfort after noting that he had been bruxing his teeth.(Graham's Medical Records at pg. 4). Dr. Graham believed that his wires would be ready for possible removal in ten days. (Id. at pg 3-4). On February 3, 2003, Dr. Graham's office received a call from MCC stating that Plaintiff was trying to take off his wires. (Id.).

On February 5, 2003 Plaintiff was transferred to Potosi Correctional Center ("PCC") and returned to MCC the next day, where Vanlandingham examined him and found that his wires were missing.[8] (Pl.'s Medical Records at A 270). Vanlandingham found he could open his mouth two inches and contacted Dr. Hampton. (Id.). Plaintiff claims that Vanlandingham told him "we are not going to put up with your shit" and "we are not going to worry about you anymore." (Resp., Doc.

---

[8]Plaintiff asserts that one wire broke at PCC and the other broke on the bus ride back to MCC. (Resp., Doc. No. 176 pg. 5-6).

No. 178 pg. 6). He also claims he was sent to administrative segregation that day and an unnamed dentist broke his jaw while he was there.[9] (Id.).

On February 11, 2003, Dr. Graham examined Plaintiff and removed his wiring and arch bar. (Graham's Medical Records at pg. 3-4). Dr. Graham noted that his fractures had healed, but a malunion[10] existed. (Id.) Dr. Graham believed this malunion occurred because Plaintiff failed to cooperate with his orders. (Id.). Plaintiff claims, but offers little evidence to show,[11] that Thornburg ordered Dr. Graham to take out his wires in order to abuse him. (Am. Compl., Doc. No. 12 pg. 20). Dr. Graham asserts that he, not prison officials, made the decision to remove Plaintiff's wires. (Graham Aff. ¶ 20).

Plaintiff was transferred to SCC, where he continued to have jaw pain. (Doc. No. 122 Ex. E). At SCC, Dr. Edgar Collett examined Plaintiff on February 24, 2003, stated that he had "never seen anything that looks as bad," and referred him to Dr. Pernoud, an oral and maxillofacial surgeon. (Resp., Doc. No. 177 Ex. 31). On March 14, 2003, Dr. Pernoud performed a dental procedure on him to reduce the discomfort caused by his malocclusion.[12] (Doc. No. 122 ¶ 41). Specifically, Dr.

---

[9] There is no evidence in the record, other than his conclusory affidavit, to support this assertion. His medical records indicate that Vanlandingham placed him in room one "per orders of custody." (Pl.'s Medical Records at A270).

[10] Malunion occurs when a broken bone heals in a deformed or crooked manner. Stedman's Medical Dictionary 1059 (27th ed. 2000).

[11] Plaintiff does offer an affidavit; however, the Court finds it largely inadmissible because "mere conclusions of law or restatements of allegations of the pleadings are not sufficient" to satisfy Fed. Rule of Civ. Proc. 56. See Croft v. Hampton, No. 04-CV-51 ERW, 2006 WL 2795423 at * 2 (E.D. Mo. Sept. 27, 2006)(quoting Walling v. Fairmount Cemetery Co., 139 F.2d 318, 322 (8th Cir. 1943)).

[12] Malocclusion occurs when the upper and lower teeth do not contact each other in the proper manner. Stedman's Medical Dictionary 1058 (27th ed. 2000).

Pernoud wired his jaw shut and suggested that he "will go back for surgery when ok'd." (Resp., Doc. No. 177 Ex. 31).[13]

On March 16 and 18, 2003 Dr. Babich examined Plaintiff. (Pl.'s Medical Record at A290-296). On March 19, 2003, Dr. Babich noticed Plaintiff had developed a cyst and referred him to Dr. Pernoud. (Id.). On March 25, 2003, Dr. Babich had the prison dental staff fix a wire that was poking Plaintiff in the cheek. (Id. at A313). A few days later, Dr. Babich noticed that he had a fever and ordered a blood test. (Id. at A313-21). On March 31, 2003, a nurse observed Plaintiff manipulating one of his wires and Dr. Babich wrote in Plaintiff's medical records that he is a "poor surgical risk in [the] sense that he manipulates, breaks, and removes his hardware and will likely [do] same after new surgery." (Id. at A321-22).

On April 3, 2003, Dr. Graham examined him and removed his wires. (Graham's Medical Records at pg. 4). He also noted that Plaintiff's malocclusion could be corrected by either removing most of his remaining teeth and creating a denture or performing additional surgery on his mandible. (Id.). At various times throughout April and May 2003, Dr. Babich evaluated his jaw. (Id. at A335-36, A339-41). On June 4, 2003, Babich ordered x-rays after he complained of jaw pain. (Id. at A341). Babich also ordered x-rays on July 31, 2003, which showed his fractures were solidly healed. (Id. at A47).

Pursuant to 42 U.S.C. § 1983, Plaintiff filed this action on April 5, 2004 alleging that Defendants violated the Eighth Amendment by subjecting him to cruel and unusual punishment. (Doc. No. 12). He alleges that Defendants deliberate indifference to his broken jaw caused him $8,200,000

---

[13]The Court has already detailed Dr. Pernoud's treatment in a previous order. (Court's Order of July 7, 2006, Doc. No. 81).

in damages. (Id. at pg. 25-26). Defendants filed their various Motions for Summary Judgment in October 2006 and December 2006. (Doc. No. 118, 122, 157).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Id. at 249.

## DISCUSSION

Defendants Babich, Vanlandingham, and Graham all argue that Plaintiff's claim must be dismissed because he cannot show they were deliberately indifferent to his serious medical need. (Doc. No. 123; Doc. No. 158). Bailey argues that Plaintiff cannot show she was personally involved in any constitutional violation. (Defs.' Memo. in Supp., Doc. No. 123). Thornburg argues that Plaintiff failed to exhaust his administrative remedies, that she has qualified immunity, he cannot make a respondeat superior claim against her, and his claim fails because he cannot seek money damages from her. (Thornburg's Memo. in Supp., Doc. No. 116).

The Eighth Circuit has held that "[t]he Eighth Amendment requires prison officials to provide humane conditions of confinement, and [o]ne condition of confinement is the medical attention given to a prisoner." Aswegan v. Henry, 49 F.3d 461, 463-64 (8th Cir. 1995) (internal quotations and citations omitted). "[A] prison official violates the Eighth Amendment by being deliberately indifferent *either* to a prisoner's *existing* serious medical needs *or* to conditions posing a substantial risk of serious *future* harm." Id. at 464 (internal quotations and citation omitted) (emphasis in original). Deliberate Indifference has both a subjective and objective component. Specifically, a plaintiff must demonstrate 1) that he suffered an objectively serious medical need, and 2) that the prison officials actually knew of, but deliberately disregarded, that need. Tlamka v. Serrell, 244 F.3d 628, 633 (8th Cir. 2001) (internal quotations and citation omitted).

"The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." Estate of Rosenberg ex rel. Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995); Smith v. Clarke, 458 F,3d 720, 724 (8th Cir. 2006) (holding medical malpractice alone is not a constitutional violation); but cf. Warren v. Fanning, 950 F.2d 1370, 1373 (8th Cir. 1991) (holding doctor's decision to take an easier and less efficacious course of treatment can support claim). Plaintiff must prove "that the

prison doctors knew of, yet disregarded, an excessive risk to his health" Logan v. Clarke, 119 F.3d 647, 649 (8th Cir. 1997) (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)) and "that their unconstitutional actions in fact caused his injuries." Gibson v. Weber, 433 F.3d 642, 646 (8th Cir. 2006). Prison officials do not violate the Eighth Amendment when, "in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996).

The Court finds Plaintiff did suffer a serious medical need. Even a layperson would realize that a broken jaw required treatment. Phillips v. Jasper County Jail, 437 F.3d 791, 795 (8th Cir. 2006) (holding medical need is serious if layperson would easily recognize the necessity for a doctor's attention); Thorbes v. Bahl, 180 Fed. Appx. 603 (8th Cir. 2006) (broken jaw is serious medical need); Harris v. Hegmann, 198 F.3d 153, 159-60 (5th Cir. 1999) (same). The Court will now examine whether Defendants were deliberately indifferent to Plaintiff's broken jaw.

**Dr. Richard Graham**

Dr. Graham's actions show that he attended to Plaintiff's broken jaw. He performed surgery on it one day after Plaintiff broke it. See Surber v. Dixie County Jail, No. 06-11898, 2006 WL 3334957 at *2-3 (11th Cir. Nov. 17, 2006)(performing surgery one day after jaw was broken did not result in constitutional violation). He examined Plaintiff in seven follow up visits, and when necessary performed additional procedures. (Graham's Medical Records at pg. 2-4). In April 2003, he recommend possible ways to remedy his malocclusion. No reasonable juror could find that Dr. Graham deliberately ignored Plaintiff's medical need.

Plaintiff argues Dr. Graham was deliberately indifferent because he allegedly followed Thornburg's order to remove his wires on February 11, 2006. The evidence does not support this assertion. Graham had considered removing the wires on January 30, 2003. (Graham's Medical

Records at pg. 3).The fractures were solidly healed, although some malocclusion did exist. (Resp., Doc. No. 178 Ex.13). The malunion, and resulting malocclusion, occurred because Plaintiff's wires kept getting removed during the healing process, despite Dr. Graham's instructions that his jaw must remain immobile. (Graham's Medical Records at pg. 3-4). Dr. Graham and Thornburg both submitted affidavits stating that Thornburg did not order Graham to remove Plaintiff's wires. (Thornburg Aff. ¶ 6; Graham Aff. ¶ 9). No reasonable juror could find that Graham's decision to remove the wires resulted in a constitutional violation.

Furthermore, to the extent that Plaintiff asserts it, his subsequent malocclusion does not create a trial worthy claim of deliberate indifference. Other courts have held that a prisoner cannot state an Eighth Amendment claim if his fracture receives treatment, but malunion occurs. See Loe v. Armistead, 582 F.2d 1291, 1296 n. 4 (4th Cir. 1978) (receiving treatment for fracture, but not getting satisfactory result, does not create a constitutional violation); McFalls v. Taylor, No. 2;05-CV-82-D-A, 2006 WL 1666666 (N.D. Miss. June 13, 2006)(inmate who was treated by a doctor, but whose fracture showed a healed deformity, could not assert a constitutional claim). The record also shows Plaintiff tampered with his wires and elastic bands, further eroding any claim that Dr. Graham was deliberately indifferent. See Pearson v. Hillsborough County Dep't of Corrs., No. Civ. 99-584-JD, 2001 WL 536079 (D.N.H. May 21, 2001)(finding that prisoner who had malunion in jaw could not claim doctors were deliberately indifferent because he refused to keep his teeth wired); Zatko v. Rowland, 835 F. Supp. 1174, 1178 (N.D. Cal. 1993)(no deliberate indifference occurs when prisoner refuses treatment or fails to follow treatment instructions). Thus, Graham's Motion for Summary Judgment will be granted.

**Theresa Vanlandingham**

As stated previously, Vanlandingham provided Plaintiff with nursing care during January and February 2003. Plaintiff alleges that on February 6, 2003 she had him sent to administrative segregation, made rude comments to him, and did not provide him with special food. The Court finds that Vanlandingham was not deliberately indifferent to Plaintiff's serious medical needs. She examined him on February 6, 2003 and made the treating doctor aware of his complaints and conditions. (Pl.'s Medical Record at A270). She also provided him with his medication and special diet. (Id. at A205-70). While taunting a prisoner is inappropriate bedside manner, it is not an Eighth Amendment violation. (Order, Doc. No. 81 pg. 6, citing Owens v. Cuyler, Civ. A. No. 81-1722, 1989 WL 79737 at *4 (E.D. Pa. July 14, 1989)). Plaintiff's claims against Vanlandingham will be dismissed.

**Dr. Glen Babich**

Dr. Babich treated Plaintiff from March to July 2003. Plaintiff alleges that Dr. Babich failed to treat his broken jaw and prevented him, after his infection cleared up, from getting a third surgery on his jaw. (Resp., Doc. No. 176). The Court finds that Dr. Babich was not deliberately indifferent to Plaintiff's medical needs. Plaintiff saw Dr. Graham in April 2003 and Dr. Babich tried to refer him to a specialist in June 2003. (Pl.'s Medical Records A341-44). Dr. Babich provided Plaintiff with pain medication to manage his malocclusion symptoms. (Id. at A317-47). Furthermore, Dr. Babich ordered two x-rays to ensure that Plaintiff's jaw was not fractured. (Id. at A341, A347).

The Court also finds that Dr. Babich's comment, that Plaintiff was a poor surgical risk, does not show that he was indifferent to his medical needs. Rather, the statement reflects Dr. Babich's professional judgment on how best to treat Plaintiff. Long, 86 F.3d at 765. No reasonable juror can find that these actions constitute deliberate indifference to a serious medical need and Plaintiff's claims against Dr. Babich will be dismissed.

**Gale Bailey**

Plaintiff alleges that Bailey, on February 6, 2003, was part of a conspiracy to throw him into administrative segregation and keep him from getting treatment. (Am. Compl., Doc. No. 12 pg. 9). She also allegedly forced him to see an unknown dentist, who re-injured his jaw. (Id.). The evidence does not supports this assertion. Plaintiff's medical records show that he was not treated by any dentist on that date. (Pl.'s Medical Records at A270). The records also show that aside from being placed in "room one as per orders of custody," he spent February 6, 2003 in the TCU. (Id.). Finally, Bailey's only involvement in the case was to call his mother to give her an update on his condition. (Id. at A195-270).

Even if the Court construed Plaintiff's allegations against Bailey to include a supervisor liability claim, it would also fail. In a § 1983 action, a plaintiff is estopped from relying on the doctrine of respondeat superior. Givens v. Jones, 900 F.2d 1229, 1233 (8th Cir. 1990); Dashley v. Corr. Med. Servs., Inc., 345 F. Supp. 2d 1018, 1021 (E.D. Mo. 2004). Supervisor liability only arises if she "directly participates in a constitutional violation or if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights.[Plaintiff] must demonstrate that [Bailey] was deliberately indifferent to or tacitly authorized the offending acts." Tlamka, 244 F.3d at 635(quoting Andrews v. Fowler, 98 F.3d 1069, 1078 (8th Cir. 1996)). Because Plaintiff cannot show that a constitutional violation occurred, he cannot show that Bailey either personally participated in one or her failure to train an employee caused one. Thus, the Court will grant Bailey's Motion for Summary Judgment.

**Teresa Thornburg**

Plaintiff alleges that Thornburg violated his constitutional rights by placing him in administrative segregation on February 6, 2003 and by ordering Dr. Graham to remove his wires. As previously determined, neither incident resulted in a constitutional violation. As such, Thornburg did

not personally participate in, or tacitly approve of, a constitutional violation. See Tlamka, 244 F.3d at 635. Thornburg's Motion for Summary Judgment will be granted.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Amended Motion for Summary Judgment (Doc. No. 97) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Thornburg's Motion for Summary Judgment (Doc. No. 118) is **GRANTED** and Plaintiff's claims against Teresa Thornburg are **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that Defendants Babich, Bailey, and Vanlandingham's Motion for Summary Judgment (Doc. No. 122) is **GRANTED** and Plaintiff's claims against Dr. Glen Babich, Gail Bailey, and Theresa Vanlandingham are **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that Defendant Graham's Motion for Summary Judgment (Doc. No. 157) is **GRANTED** and Plaintiff's claims against Dr. Richard Graham are **DISMISSED** with prejudice.

Dated this 2nd day of March, 2007.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE